**No. 22-10250**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Shelly Milgram,

Plaintiff-Appellant,

*v.*

JPMorgan Chase Bank, N.A., et al.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of Florida

Hon. Aileen M. Cannon

Case No. 0:19-cv-60929

**Brief of Amicus Curiae
Consumer Financial Protection Bureau
in Support of Plaintiff-Appellant and Reversal**

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Acting Deputy General Counsel*
Laura M. Hussain
  *Assistant General Counsel*
Karen S. Bloom
  *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
(202) 435-7012
Karen.bloom@cfpb.gov

*Milgram v. JPMorgan Chase Bank, N.A.*, No. 22-10250

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. Rule 26.1, counsel for *amicus curiae* Consumer Financial Protection Bureau certifies that the following additional persons and entities have an interest in the outcome of this appeal:

Bloom, Karen S.

Bressler, Steven Y.

Consumer Financial Protection Bureau

Frotman, Seth

Hussain, Laura M.

# TABLE OF CONTENTS

Table of Citations.......................................................................ii

Interest of Amicus Curiae.........................................................1

Statement.................................................................................. 3

    A.   The Fair Credit Reporting Act.......................................... 3

    B.   Factual and Procedural Background ...................................... 7

Summary of Argument ............................................................ 11

Argument ................................................................................13

    A.   Furnishers Are Required to Reasonably Investigate
          Disputes, Regardless of Whether the Disputed
          Accuracy Can Be Characterized as Legal .............................13

          1.   The FCRA Requires a Reasonable Investigation
               Under the Circumstances.................................................13

          2.   Congress Did Not Exclude Disputes that Implicate
               Legal Questions...............................................................16

          3.   It is Difficult to Distinguish Legal Questions from
               Factual Ones.................................................................. 22

          4.   The District Court's Decision Should Be Reversed......... 24

    B.   Appellant's Claim Is Timely Because Each Dispute
          Triggers a New Limitations Period ...................................... 26

Conclusion ............................................................................ 29

# TABLE OF CITATIONS

**Cases** **Page(s)**

*Alston v. Wells Fargo Bank, N.A.*, No. 8:12-cv-03671-AW,
  2013 WL 990416 (D. Md. Mar. 12, 2013) ................................................... 14

*Blackwell v. Capital One Bank*, No. 606CV066,
  2008 WL 793476 (S.D. Ga. Mar. 25, 2008) ........................................ 27, 28

*Broccuto v. Experian Info. Sols. Inc.*, No. 3:07CV782-HEH,
  2008 WL 1969222 (E.D. Va. May 6, 2008) ............................................ 27

*Bruce v. Homeward Residential, Inc.*, No. 1:14-CV-3325-MHC-AJB,
  2015 WL 5797846 (N.D. Ga. Aug. 31, 2015) ....................................... 27, 29

*Carvalho v. Equifax Info. Servs. LLC,*
  629 F.3d 876 (9th Cir 2010) .......................................................... 18, 20, 21

*Chiang v. Verizon New Eng., Inc.,*
  595 F.3d 26 (1st Cir. 2010) ................................................................ 18, 19

*Chuluunbat v. Experian Info. Sols., Inc.,*
  4 F.4th 562 (7th Cir. 2021) ..................................................................... 23

*Cornock v. TransUnion LLC,*
  638 F. Supp. 2d 158 (D.N.H. 2009) ................................................. 22, 23

*DeAndrade v. Trans Union LLC,*
  523 F.3d 61 (1st Cir. 2008) ..................................................................... 20

*Denan v. Trans Union LLC,*
  959 F.3d 290 (7th Cir. 2020) ................................................................... 21

*Dennis v. BEH-1, LLC,*
  520 F.3d 1066 (9th Cir. 2008) ............................................................... 23

*Doss v. Great Lakes Educ. Loan Servs., Inc.*, No. 3:20cv45,
  2021 WL 1206800 (E.D. Va. Mar. 30, 2021) ........................................... 15

*Gorman v. Wolpoff & Abramson, LLP,*
  584 F.3d 1147 (9th Cir. 2009) .................................................. 4, 14, 15, 20

*Hinkle v. Midland Credit Mgmt.*,
827 F.3d 1295 (11th Cir. 2016)........................................................13, 14, 15

*Hopkins v. I.C. Sys., Inc.*, No. CV 18-2063,
2020 WL 2557134 (E.D. Pa. May 20, 2020) ...................................... 19, 24

*Losch v. Nationstar Mortg. LLC*,
995 F.3d 937 (11th Cir. 2021) ............................................................ 18, 23

*Johnson v. MBNA Am. Bank, N.A.*,
357 F.3d 426 (4th Cir. 2004).....................................................................14

*Maiteki v. Marten Transp. Ltd.*,
4 F. Supp. 3d 1249 (D. Colo. 2013)..................................................... 27, 28

*Marcinski v. RBS Citizens Bank, N.A.*,
36 F. Supp. 3d 286 (S.D.N.Y. 2014) ...................................................26, 28

*Markosyan v. Hunter Warfield, Inc.*, No. CV 17-5400,
2018 WL 2718089 (C.D. Cal. May 11, 2018)............................................ 20

*Milgram v. JPMorgan Chase Bank, N.A.*, No. 19-60929-CIV,
2021 WL 6755283 (S.D. Fla. Dec. 30, 2021) ................................... *passim*

*Nelson v. Ocwen Loan Servicing, LLC,* No. 3:14-cv-00419-HZ,
2014 WL 2866841 (D. Or. June 23, 2014) ............................................... 23

*Ponder v. Ocwen Loan Servicing, LLC*, No. 1:16-CV-04125,
2021 WL 5027495 (N.D. Ga. Aug. 4, 2021) ............................................ 27

*Scheel-Baggs v. Bank of Am.*,
575 F. Supp. 2d 1031 (W.D. Wis. 2008) .................................................. 24

*Sessa v. Linear Motors, LLC*, No. 19-CV-9914,
2021 WL 6052134 (S.D.N.Y. Dec. 20, 2021) .......................................... 24

*Solus v. Regions Bank*, No. 1:19-CV-2650-CC-JKL,
2020 WL 4048062 (N.D. Ga. July 17, 2020) ........................................... 18

*Typpi v. PNC Bank*, *Nat'l Ass'n*, No. 13 CV 3930,
2014 WL 296035 (N.D. Ill. Jan. 27, 2014) ...............................................15

*Vasquez v. Bank of Am., N.A.*, No. 15-cv-04072-RS,
2015 WL 7075628 (N.D. Cal. Nov. 13, 2015)........................................... 26

iii

## Statutes

15 U.S.C. § 1681................................................................................1

15 U.S.C. § 1681a(d) ...................................................................... 3

15 U.S.C. § 1681c-2 ....................................................................... 6

15 U.S.C. § 1681g(a) ...................................................................... 3

15 U.S.C. § 1681i(a)(1)(A) .......................................................5, 16

15 U.S.C. § 1681i(a)(2) ............................................................5, 16

15 U.S.C. § 1681i(a)(5)(A) .......................................................5, 16

15 U.S.C § 1681i(a)(6) ................................................................... 5

15 U.S.C. § 1681i(b)-(c) ................................................................ 5

15 U.S.C. § 1681n ..................................................................... 2, 5

15 U.S.C. § 1681o........................................................................ 2, 5

15 U.S.C. § 1681p........................................................... 6, 26, 27

15 U.S.C. § 1681s(a)–(c)................................................................1

15 U.S.C. § 1681s(e) ......................................................................1

15 U.S.C. § 1681s-2(a)(6)(A) ...................................................... 7

15 U.S.C. § 1681s-2(a)(8) .............................................................1

15 U.S.C. § 1681s-2(b)............................................................ 4, 11, 16

15 U.S.C. § 1681s-2(b)(1)(A) ................................................... 1, 13

15 U.S.C. § 1681s-2(b)(1)(A)-(E)................................................ 5

15 U.S.C. § 1681s-2(c)(1).............................................................1

15 U.S.C. § 1682s-2(c) ................................................................ 2

Pub. L. No. 108-159, 117 Stat. 1952 (2003) ............................. 5

## Regulations

12 C.F.R. § 1022.41(a) .........................................................................21

12 C.F.R. § 1022.41(a)(1) ...................................................................21

12 C.F.R. § 1022.43(a) .......................................................................16

12 C.F.R. § 1022.43(a)(1) ...................................................................16

## Other Authorities

Amicus Br. For Consumer Fin. Prot. Bureau, *Gross v. CitiMortgage, Inc.,*
No. 20-17160, 2021 WL 1673876 (9th Cir.)................................17

Consumer Fin. Prot. Bureau, *Annual Report of Credit and Consumer
Reporting Complaints* (Jan. 2022),
https://files.consumerfinance.gov/f/documents/cfpb_fcra-611-
e_report_2022-01.pdf ...................................................... 2, 6, 28

Consumer Fin. Prot. Bureau, *Key Dimensions and Processes in the U.S.
Credit Reporting System* (2012),
https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-
white-paper.pdf......................................................................... 3

Def's Mot. Summ. J., *Milgram v. Chase Bank USA, N.A.,*
0:19-CV-60929 (S.D. Fla. July 31, 2020) ................................... 9

Def.'s Resp. to Pl.'s Statement of Facts, *Milgram v. Chase Bank USA, N.A.,*
0:19-CV-60929 (S.D. Fla. Aug. 12, 2020) ................................. 25

Fed. Trade. Comm'n, 40 Years of Experience with the Fair Credit Reporting
Act: An FTC Staff Report with Summary of Interpretations (2011),
https://www.ftc.gov/sites/default/files/documents/reports/40-years-
experience-fair-credit-reporting-act-ftc-staff-report-summary-
interpretations/110720fcrareport.pdf......................................14

Pl.'s Mot. Partial Summ. J., *Milgram v. Chase Bank USA, N.A.,*
0:19-CV-60929 (S.D. Fla. July 22, 2020). ............................. 8, 9

Pl.'s Resp. to Def.'s Statement of Facts, *Milgram v. Chase Bank USA, N.A.,*
0:19-CV-60929 (S.D. Fla. Aug. 14, 2020) ................................. 25

S. Rep. No. 91-517 (1969) ................................................................. 3

## INTEREST OF AMICUS CURIAE

To ensure fair and accurate credit reporting, the Fair Credit Reporting Act (FCRA or the Act), 15 U.S.C. § 1681 *et seq*., imposes various requirements that consumer reporting agencies (CRAs) and entities that furnish information to CRAs (furnishers) must follow when they compile and disseminate personal information about individuals. The Consumer Financial Protection Bureau (CFPB or Bureau) has exclusive rule-writing authority for most provisions of the Fair Credit Reporting Act. 15 U.S.C. § 1681s(e). The Bureau interprets and, along with various other federal and state regulators, enforces the Act's requirements. *Id*. § 1681s(a) – (c).

The FCRA requires a furnisher who is notified by a CRA of a dispute about information it furnished to the CRA (i.e., an indirect dispute)[1] to "conduct an investigation with respect to the disputed information." *Id*. § 1681s-2(b)(1)(A). This case presents questions relating to the scope of a furnisher's duty to investigate an indirect dispute, and the time within

---

[1] An "indirect dispute" is one that the consumer files with the CRA, and the CRA, in turn, notifies the furnisher of the dispute. In contrast, a "direct dispute," provided for by a different provision of the FCRA, 15 U.S.C. § 1681s-2(a)(8), is one that the consumer files directly with the furnisher. The FCRA does not provide a private right of action to consumers for violations of furnishers' obligation to investigate direct disputes. *Id*. § 1681s-2(c)(1).

which a consumer may seek redress under the FCRA for a furnisher's violation of that duty.

A decision unduly narrowing the scope of the furnisher obligation would run counter to the purpose of the FCRA to require reasonable investigation and could limit the circumstances in which the Bureau could bring an enforcement action to protect consumers. It could also increase the volume of consumer complaints[2] the Bureau receives, and devotes resources to address, about credit reporting issues. A decision narrowly construing the time frame in which a consumer can bring a private right of action pursuant to the FCRA to recover damages for a furnisher's willful or negligent violation of its investigation duties, *see id.* § 1681n, 1681o; *cf id.* § 1682s-2(c), would also affect the Bureau. These private enforcement efforts are an important supplement to the Bureau's own enforcement of the FCRA, adding significantly to the deterrence of FCRA violations and thus conserving limited government enforcement resources. The Bureau therefore has a substantial interest in these issues.

---

[2] From January to September 2021, the Bureau received over 500,000 consumer complaints related to credit or consumer reporting. *See* Consumer Fin. Prot. Bureau, *Annual Report of Credit and Consumer Reporting Complaints* (Jan. 2022), at 21, *available at* cfpb_fcra-611-e_report_2022-01.pdf (consumerfinance.gov)

**STATEMENT**

### A. The Fair Credit Reporting Act

1. Information contained in consumer reports has critical effects on Americans' daily lives. Consumer reports are used to evaluate consumers' eligibility for loans and the interest rates they pay, their eligibility for insurance and the premiums they pay, their eligibility for rental housing, and for checking accounts. Prospective employers commonly use consumer reports in their hiring decisions. *See generally* Consumer Fin. Prot. Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System (2012), https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.[3] Given the importance of this information, Congress enacted the FCRA to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517, at 1 (1969).

2. Since its enactment, the FCRA has governed the practices of consumer reporting agencies (CRAs) that collect and compile consumer information into consumer reports for use by credit grantors, insurance

---

[3] The FCRA generally uses the term "consumer report," *see e.g.*, 15 U.S.C. § 1681a(d) (defining "consumer report"), rather than the more common term "credit report." Additionally, when consumers request their own information, the FCRA refers to that as a "disclosure" of information in the consumer's "file." *See id.* § 1681g(a).

3

companies, employers, landlords, and other entities that make eligibility decisions affecting consumers. To further ensure that consumer reports are accurate, in 1996 Congress amended the FCRA to also impose "duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). These duties include requiring a furnisher, after it receives notice of a dispute from a CRA pursuant to § 1681i(a)(2), to:

(A)  [C]onduct an investigation with respect to the disputed information;

(B)  [R]eview all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C)  [R]eport the results of the investigation to the consumer reporting agency;

(D)  [I]f the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E)  [I]f an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under [§ 1681s-2(b)(1)], for purposes of reporting to a consumer reporting agency only, as appropriate, based on the result of the reinvestigation promptly –

    (i)  [M]odify that item of information;

    (ii)  [D]elete that item of information; or

    (iii)  [P]ermanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

These responsibilities are part of the FCRA's overall framework for ensuring accuracy in credit reports. As is relevant here, when a consumer

notifies a CRA that he or she disputes "the completeness or accuracy of any item . . . contained in a consumer's file," the CRA is required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *Id.* § 1681i(a)(1)(A). The CRA also provides notice to the furnisher, *id.* at § 1681i(a)(2), after which the furnisher is required to engage in the activities listed above. *Id.* § 1681s- 2(b)(1)(A)-(E).[4] A consumer may sue a furnisher for willful or negligent noncompliance with its obligation to perform an investigation under Section 1681s-2(b). *Id.* §§ 1681n, 1681o.

3. In 2003, Congress further expanded consumers' ability to seek relief for violations of the FCRA when it passed the Fair and Accurate Credit Transactions Act, Pub. L. No. 108-159, 117 Stat. 1952 (2003), which extended the statute of limitations for FCRA violations. As amended, the statute of limitations provision states that "[a]n action to enforce any

---

[4] Within 30 days of receiving notice of the dispute, the CRA must record the status of the disputed information or modify or delete the disputed information, as appropriate, and promptly notify the furnisher that the information has been modified or deleted. 15 U.S.C. § 1681i(a)(1)(A), (a)(5)(A). After completing a reinvestigation, the CRA must notify the consumer of the results within five business days. *Id.* at § 1681i(a)(6). If the CRA reinvestigation does not resolve the dispute, the consumer has the right to add a brief statement about the dispute that will appear or be summarized in all subsequent consumer reports from the CRA that contain the information. *Id.* at § 1681i(b)-(c).

liability created under [the FCRA] may be brought . . . not later than the earlier of" "(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.

4. Despite Congress's repeated efforts to promote accuracy, errors persist in consumer reports. Between January and September 2021, the Bureau received more than 500,000 complaints about credit or consumer reporting, and the most common issue they identified was incorrect information on a credit report. *See* Consumer Fin. Prot. Bureau, *Annual Report of Credit and Consumer Reporting Complaints* (Jan. 2022) ("Annual Report"), at 21, 30, cfpb_fcra-611-e_report_2022-01.pdf (consumerfinance.gov). Most complaints about incorrect information on a credit report involve consumer claims of identity theft. *Id*. at 31. Through various provisions of the FCRA, Congress has made clear that it did not intend for information resulting from identity theft to be included in a consumer's credit report. For example, the FCRA requires CRAs to block reporting of information resulting from identity theft under specified circumstances, 15 U.S.C. § 1681c-2, and requires furnishers to have reasonable procedures to respond to notifications from CRAs regarding

identity theft blocks so that they do not refurnish the blocked information. 15 U.S.C. § 1681s-2(a)(6)(A).

### B.  Factual and Procedural Background

Plaintiff-Appellant Shelly Milgram is a small business owner.[5] Defendant-Appellee JPMorgan Chase Bank, N.A., is a national bank.

In 2003, Ms. Milgram opened an interior design company called Dec the Walls Interiors Co., also known as Yolo Interiors. In 2013, Yolo Interiors hired an employee who later surreptitiously opened several credit cards in Ms. Milgram's name without her consent. One of the fraudulently opened cards was a Chase personal credit card, which the former employee used to pay for her own personal expenses. As of June 2016, that card had accumulated $30,277 in unpaid charges. The former employee was prosecuted for theft and fraud in connection with these activities, and she pled guilty to all charges relating to stealing Ms. Milgram's identity.

In May 2016, Ms. Milgram alerted Chase and issuers of the other fraudulent credit accounts that she had discovered suspicious activity. On June 9, 2016, Chase sent Ms. Milgram a letter stating that it had "closed the account" for her credit card. A few days later, Ms. Milgram sent to Chase a

---

[5] The facts in this section are derived from the district court's description, *Milgram v. JPMorgan Chase Bank, N.A.*, No. 19-60929, 2021 WL 6755283, at *2-5 (Dec. 30, 2021).

"Confirmation of Forgery" form, stating that the charges on her account were unauthorized and fraudulent.

Because Chase continued to furnish information about the unpaid balance on the fraudulently-opened card, Ms. Milgram disputed with the nationwide CRAs (Equifax Information Services, LLC, Experian Information Solutions, LLC, and TransUnion, LLC) the inclusion of information related to the Chase card on her credit report. As relevant here, she sent disputes to the nationwide CRAs, including on August 18, 2017, October 20, 2018, and November 14, 2018. With each dispute, Ms. Milgram provided additional information about the identity theft. For example, with her submission on November 14, 2018, Ms. Milgram included a copy of an order from the judge who presided over the state criminal prosecution of the former employee. The order recommended that CRAs remove negative charge-offs and delinquencies from Ms. Milgram's credit history.

Ms. Milgram filed this suit in April 2019, alleging that Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations following receipt of her indirect disputes.[6] Ms. Milgram

---

[6] Chase, Capital One, and three CRAs (Experian, Equifax, and TransUnion) were initially named as Defendants. Plaintiff has resolved her claims against all defendants other than Chase. *See* Pl.'s Mot. Partial Summ. J. 9, ECF No. 126.

moved for partial summary judgment on the question of Chase's liability under the FCRA. She argued that Chase's investigations were unreasonable because Chase "did not have sufficient evidence to conclude that the Imposter Chase Card derived from anything other than identity theft," and could not, therefore, have verified the furnished information. Pl.'s Mot. Partial Summ. J. 13-14, ECF No. 126. Chase cross-moved for summary judgment, arguing that (1) Ms. Milgram's FCRA claim was barred by the two-year statute of limitations because she "knew in October 2016 that Chase had verified the information on her credit report" that was the basis for all of her disputes, but did not sue until April 2019, more than three years later; (2) Plaintiff's claim failed as a matter of law because Ms. Milgram's disputes turned on the *legal* question of her liability for the credit card account, as opposed to any "factual inaccuracy" that could provide a basis for a claim under the FCRA; (3) Chase's reporting about Ms. Milgram's liability for the balance on the Chase Personal Card was accurate because Plaintiff, in negligently supervising her former employee, provided the employee with apparent authority to use and pay the Chase card; and (4) Chase conducted a reasonable investigation of Plaintiff's disputes. Def.'s Mot. Summ. J. 14-24, ECF No. 135.

The district court granted Chase's motion for summary judgment and denied Plaintiff's motion for partial summary judgment. *Milgram v. JPMorgan Chase Bank, N.A.*, No. 19-60929-CIV, 2021 WL 6755283 (S.D. Fla. Dec. 30, 2021) ("Op."). The court first rejected Chase's argument that Plaintiff's claims are time-barred. Holding that each failure to conduct a reasonable investigation in response to a dispute could be a separate FCRA violation subject to its own statute of limitations," the court found Plaintiff's FCRA claim[7] related to her post-April 2017 disputes to be timely. *Id.* at *8-9.

Turning to the merits, the court characterized the investigation duties FCRA imposes on furnishers as "procedural" and "far afield" from legal "questions of liability under state-law principles of negligence, apparent authority, and related inquiries." *Id.* at *12. Because the court found that Ms. Milgram did not identify any particular *procedural* deficiencies in Chase's investigations (i.e., she did "not identify any missing documents, testimony, or other factual inaccuracy in the information Chase relied on in its investigation" and did not "offer any additional information that she

---

[7] Although Plaintiff's complaint asserted only one count related to violations of the FCRA, this count actually challenges the reasonableness of Chase's response to multiple indirect disputes. *See* Compl. ¶ 93.

now would submit to Chase to alter its substantive determination"), it held there was no genuine dispute that Chase conducted a reasonable investigation "as required under the procedural requirements of the FCRA," and granted Chase's motion for summary judgment. *Id.* at *11-12.

Plaintiff filed this appeal on January 19, 2022.

## SUMMARY OF ARGUMENT

The Fair Credit Reporting Act requires furnishers of information to consumer reporting agencies to reasonably investigate disputes consumers make to CRAs regarding the completeness or accuracy of the information furnished. Although the statute does not distinguish between legal and factual disputes, the district court's decision could be read to suggest that a furnisher's failure to investigate a dispute that the information is inaccurate for a legal reason (as opposed to a factual inaccuracy) cannot form the basis for a claim that a furnisher has violated § 1681s-2(b), and the district court described "questions of liability" as "far afield" from the procedural duties imposed on furnishers in the FCRA to conduct a reasonable investigation.

To the extent this language indicates that the investigation obligation set forth in § 1681s-2(b) imposes no duty on furnishers to investigate

disputes that identify legal inaccuracies, this is incorrect. [8] The FCRA does not categorically exempt disputes presenting legal questions from the investigation furnishers must conduct. Moreover, attempting to separate "factual" disputes from "legal" ones would be hard to implement and would undermine the purposes of the FCRA. This Court should clarify that furnishers are required to conduct reasonable investigations of both legal and factual questions posed in consumer disputes, and remand for reconsideration of the reasonableness of Chase's investigation under the appropriate standard.

In reviewing the district court's ruling, this Court should also affirm the district court's decision that Plaintiff's claims were timely. Chase argued to the district court that Ms. Milgram's claims were barred by the FCRA's two-year statute of limitations because she "knew in October 2016 that Chase had verified the [disputed] information on her credit report," but did not sue until April 2019, more than three years later. Op. at *7. The district court correctly held that each separate notice of dispute triggers a duty to investigate the disputed information, and that each time a furnisher fails

---

[8] The district court was unclear about whether it was granting summary judgment to Chase because furnishers are not required to investigate *legal* disputes, or because Chase had conducted a sufficiently reasonable investigation of both the factual and legal issues raised.

reasonably to investigate the dispute results in a new FCRA violation, with its own statute of limitations. *Id.* at *8. This Court should affirm that Ms. Milgram's FCRA claim related to her post-April 2017 disputes is timely.

## ARGUMENT

### A. Furnishers Are Required to Reasonably Investigate Disputes, Regardless of Whether the Disputed Inaccuracy Can Be Characterized as Legal

#### 1. The FCRA Requires a Reasonable Investigation Under the Circumstances

Under the FCRA, a furnisher who receives notice of a dispute about the completeness or accuracy of information it provided to a CRA is required to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). While the FCRA does not explicitly specify the nature and extent of the "investigation" a furnisher must conduct under 1681s-2(b), this Court has found that "'reasonableness' is an appropriate touchstone for evaluating investigations under § 1681s-2(b)."[9] *Hinkle v. Midland Credit Mgmt.,* 827 F.3d 1295, 1301-02 (11th Cir.

---

[9] The court reached this conclusion because it found the FCRA's structure "suggested that the duty of a furnisher under § 1681s-2(b) is a component of the larger reinvestigation duty imposed by § 1681i(a) on CRAs themselves." *Hinkle,* 827. F.3d at 1301. Since Section 1681i(a) imposes on CRAs "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to [their] attention by [a] consumer," *id.* (emphasis added)), furnisher investigations should likewise be evaluated under a reasonableness standard. *Id.*

2016). Requiring a reasonable investigation, rather than a "cursory or sloppy review of the dispute," comports with FCRA's goal to "protect consumers from the transmission of inaccurate information about them.'" *Gorman*, 584 F.3d at 1155, 57.

What constitutes a "reasonable" investigation is case specific, and the investigation must be "reasonable under the circumstances. It may be either simple or complex, depending on the nature of the dispute." Fed. Trade. Comm'n, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations (2011), https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf. A merely "superficial" inquiry will not suffice; a reasonable investigation "requires some degree of careful inquiry." *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 431 (4th Cir. 2004); *Hinkle*, 827 F.3d at 1303. It must contain a "qualitative component," *Johnson*, 357 F.3d at 430, and courts reject furnishers' attempts to claim that they can meet their obligation to investigate simply because they have gone through the motions of conducting an investigation. *See, e.g.*, *Alston v. Wells Fargo Bank, N.A.*, No. 8:12-cv-03671-AW, 2013 WL 990416, at *5 (D. Md. Mar. 12, 2013). While an investigation "is not necessarily

unreasonable because it results in a substantive conclusion unfavorable to the consumer," *Gorman,* 584 F.3d at 1161, a furnisher's continuing to erroneously report information after a consumer files a dispute about the accuracy of that information may be evidence of the unreasonableness of a furnisher's investigation in certain circumstances. *See, e.g.*, *Doss v. Great Lakes Educ. Loan Servs., Inc.*, No. 3:20cv45, 2021 WL 1206800, at *9 (E.D. Va. Mar. 30, 2021).[10] When a furnisher ends its investigation by reporting that the disputed information has been verified as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle*, 827 F.3d at 1303. In other words, the reasonableness of the investigation can be evaluated by how thoroughly the furnisher investigated the dispute (e.g., how well its conclusion is supported by the information it considered or reasonably could have considered).[11]

---

[10] *See also Typpi v. PNC Bank*, *Nat'l Ass'n*, No. 13 CV 3930, 2014 WL 296035, at *9 (N.D. Ill. Jan. 27, 2014).

[11] To the extent the district court suggested that Chase's investigation was "reasonable" because Ms. Milgram did not identify a *procedural* deficiency in it, regardless of the thoroughness of the investigation and the fit between the evidence and the substantive conclusion, its decision is inconsistent with this Court's precedent, and would contravene the purpose of the statute to require meaningful investigation to ensure accuracy.

### 2. Congress Did Not Exclude Disputes that Implicate Legal Questions

The FCRA specifically describes the types of indirect disputes that furnishers need to investigate – those that dispute "the completeness or accuracy of any item of information contained in a consumer's file."[12] Nothing in that description suggests that Congress intended to exclude disputes that implicate legal issues. To the contrary, the accuracy and completeness of information in consumer files often turns on legal issues, such as whether a debt is valid and whom it obligates.[13]

Although the text of the statute does not distinguish between legal and factual disputes, the district court's opinion – which is unclear about whether it was granting summary judgment to Chase because it found that furnishers are not required to investigate legal disputes, or because Chase had conducted a sufficiently reasonable investigation of both the factual

---

[12] 15 U.S.C. §§ 1681i(a)(1)(A), (a)(2), 1681s-2(b)(1). Notably, under the FCRA, a CRA is required to delete an item if it cannot be verified. *Id*. § 1681i(a)(5)(A).

[13] Although the Bureau has not issued regulations addressing indirect furnisher disputes, it has issued regulations implementing the requirement for furnishers to conduct investigations of direct disputes concerning accuracy, and the Court may look to those regulations for guidance. They specifically require that "a furnisher must conduct a reasonable investigation of a direct dispute if it relates to [] [t]he consumer's liability for a credit account or other debt with the furnisher," 12 C.F.R. § 1022.43(a), (a)(1), which clearly involves a legal question.

and legal issues raised – could be read to suggest that furnishers' obligations to conduct reasonable investigations of consumer disputes do not extend to assessing the merits of legal questions. While rejecting an argument that furnishers are *prohibited* from resolving legal questions relating to the nature of a consumer's debt as part of an investigation, the district court held that a consumer cannot prevail on a FCRA claim by raising disputed legal questions as part of the dispute process instead of pointing to factual inaccuracies within the credit report, (i.e., that furnishers cannot be held liable for failing to investigate legal, as opposed to factual disputes), Op. at * 12, and characterized legal questions of liability as "far afield from the procedural duties imposed in the FCRA to conduct a reasonable investigation." *Id.*

This Court should clarify that not only are furnishers permitted to investigate legal questions, but that furnishers are statutorily obligated to reasonably investigate both legal and factual questions raised in indirect disputes to CRAs about the accuracy or completeness of information they furnish.[14]

---

[14] The Bureau recently filed an amicus brief making this argument to the Ninth Circuit in *Gross v. CitiMortgage, Inc.*, No. 20-17160, 2021 WL 1673876 (9th Cir.) (pending).

The FCRA does not categorically exempt disputes raising legal issues from the investigations it requires of furnishers under § 1681s-2(b)(1). Some courts have made such a distinction between factual and legal inaccuracies in the context of a *different* FRCA provision that does not apply to furnishers, Section 1681i, which requires *CRAs* to conduct "a reasonable reinvestigation" of disputes received (directly or indirectly through a reseller) from consumers regarding the accuracy or completeness of information in the consumer's file. *See, e.g.*, *Solus v. Regions Bank*, No. 1:19-CV-2650-CC-JKL, 2020 WL 4048062, at *4 (N.D. Ga. July 17, 2020) ("[R]easonable reinvestigation does not require CRAs to resolve legal disputes about the validity of the underlying debts they report."); *Carvalho v. Equifax Info. Servs. L.L.C.,* 629 F.3d 876, 892 (9th Cir 2010) ("A CRA is not required as part of its reinvestigation duties to provide a legal opinion on the merits").[15]

The district court relied on a First Circuit case, *Chiang v. Verizon New England*, which imported this factual/legal distinction from CRA

_____

[15] Although this Court has cited *Carvalho* approvingly with respect to a CRA's obligations, *see Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 946-47 (11th Cir. 2021), ultimately this Court concluded that a CRA that "did nothing" in response to a consumer's dispute could be found to have violated the FCRA, even though it is not required to *resolve* legal disputes.

investigations into the context of furnisher reinvestigations. *See* Op. at 24-27; *Chiang v. Verizon New Eng., Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) ("[J]ust as in suits against CRAs, a plaintiff's required showing [in a suit against a furnisher] is *factual* inaccuracy, rather than the existence of disputed legal questions . . . [and] [l]ike CRAs, furnishers are 'neither qualified nor obligated to resolve' matters that 'turn[] on questions that can only be resolved by a court of law").[16] As further explained below, cases making a "factual" and "legal" distinction were incorrectly decided because the FCRA does not distinguish between "factual" and "legal" disputes. In any event, this Court should decline to adopt *Chiang*'s reasoning and not extend this distinction from the context of CRA investigations to furnisher investigations.

This Court has not in a published opinion applied the factual/legal distinction in the context of furnisher investigations. *See* Op. at *10, 12 (relying on cases of this Court that were not selected for publication, which distinguish legal and factual disputes). And it should decline to do so here.

---

[16] *See also Hopkins v. I.C. Sys., Inc.*, No. CV 18-2063, 2020 WL 2557134, at *7 (E.D. Pa. May 20, 2020) ("While the legal inaccuracy exception has developed around 15 U.S.C. § 1681i, which sets the requirements for reinvestigations by credit reporting agencies as opposed to furnishers . . . federal courts have extended the legal inaccuracy exception to . . . investigations performed by furnishers").

Courts that have distinguished between factual and legal investigations in the CRA context have based their holdings on the determination that "a credit agency ... is *neither qualified nor obligated to resolve* under the FCRA" the relevant "legal issue." *See, e.g.*, *DeAndrade v. Trans Union L.L.C.*, 523 F.3d 61, 68 (1st Cir. 2008) (emphasis added). "With respect to the . . . disputed information, the CRA is a third party, lacking any direct relationship with the consumer, and its responsibility is to '*re* investigate' a matter once already investigated in the first place." *Gorman*, 584 F.3d at 1156-57. However, "the rationale for excluding legal validity from the scope of a CRA's investigative duty does not extend to a furnisher." *Markosyan v. Hunter Warfield, Inc.*, No. CV 17-5400, 2018 WL 2718089, at *8 (C.D. Cal. May 11, 2018). Furnishers are qualified and obligated to assess (and routinely *do* assess in deciding whether to collect on obligations and the specific amount to collect, and in complying with their duties to accurately report credit information) issues such as whether debts are actually due and/or are collectible. As the Ninth Circuit noted, the creditor/furnisher "stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation." *Carvalho*, 629 F.3d at

20

892.[17]

Moreover, even in the context of Section 1681i CRA reinvestigations, it is not clear that a stark distinction between legal and factual disputes is appropriate. The Ninth Circuit has held that "[a] CRA is not required as part of its reinvestigation duties to provide a *legal opinion* on the merits [because] determining whether the consumer has a valid defense is a question for a court to resolve in a suit against the [creditor]." *Id.* (emphasis added) (quotation marks omitted). But a CRA does not have to conclusively adjudicate a legal dispute; it just needs to conduct a reasonable investigation of it. For example, even if Section 1681i does not require a CRA to conclusively interpret a particular ambiguous or complex statute, it may require a CRA to take lesser steps, such as assessing whether the CRA has received or can readily obtain guidance about the issue, or has developed a policy about how to handle the situation, to the extent such

---

[17] Furnishers have obligations with respect to the "accuracy" of the information they provide (i.e., including that the information "correctly [r]eflects . . . liability for the account"). 12 C.F.R. § 1022.41(a), (a)(1). "Neither the FCRA nor its implementing regulations impose . . . a duty [on CRAs] to determine the legality of a disputed debt," so "it makes sense" that "[o]nly furnishers are tasked with accurately reporting liability": "they assumed the risk and bear the loss of unpaid debt, so they are in a better position to determine the legal validity of a debt." *Denan v. Trans Union L.L.C.*, 959 F.3d 290, 295 (7th Cir. 2020).

steps would be part of a reasonable investigation in a particular context.

### 3. It is Difficult to Distinguish Legal Questions from Factual Ones

This Court should also reject a formal distinction between factual and legal investigations because it will likely prove unworkable in practice. "[C]lassifying a dispute over a debt as 'factual' or 'legal' will usually prove a frustrating exercise." *Cornock v. TransUnion L.L.C.*, 638 F. Supp. 2d 158, 163 (D.N.H. 2009). The same dispute could be characterized as either factual or legal or both. For example, the Seventh Circuit recently considered a set of consolidated cases in which plaintiffs claimed they did not owe certain debts to the creditors listed on their credit reports because the debts had purportedly been assigned to other companies. The district courts offered different reasoning and conclusions in each of the cases: some courts determined that whether the creditors owned the debts was a question of law, one decided that ownership of a debt was a mixed question of law and fact, and still other courts "eschewed a rigid distinction between law and fact and focused on the institutional competency of the [CRAs] to resolve the claims." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 566 (7th Cir. 2021). Likewise, another court noted that a plaintiff's dispute about a fraudulently opened credit card account "could be called 'factual' in the sense that . . . [plaintiff] did not sign the credit card application as a

matter of fact; but it could also be called 'legal' in the sense that, as [the CRA] suggests, [plaintiff] claimed that he therefore had no liability as a matter of law while [the bank] claimed otherwise based on alleged payments to it out of an account he jointly held." *Cornock*, 638 F. Supp. 2d at 163.

As a result of the difficulty in cleanly distinguishing legal and factual issues, even in the context of CRA reinvestigations, some courts have correctly rejected a formal legal/factual distinction. For example, "the Ninth Circuit has endorsed holding a CRA liable under the FCRA when it 'overlooks or misinterprets' . . . publicly available documents of *legal* significance." *Nelson v. Ocwen Loan Servicing, LLC,* No. 3:14-cv-00419-HZ, 2014 WL 2866841, at *5 (D. Or. June 23, 2014) (emphasis added) (relying on *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1068-70 (9th Cir. 2008)).[18] And even in courts that maintain a factual/legal distinction, courts have found that if a legal issue has already been adjudicated by another court or otherwise resolved, a dispute raising that issue should be

---

[18] *Dennis* also explained the importance of CRAs training their employees "to understand the legal significance of the documents they rely on." 520 F.3d at 1071. This Court cited *Dennis* in similarly holding that "where [a CRA] didn't even check the bankruptcy docket – a jury could find that" the CRA violated the FCRA. *Losch*, 995 F.3d at 946-47.

considered factual, rather than legal. *See, e.g.*, *Hopkins v. I.C. Sys.*, No. CV 18-2063, 2020 WL 2557134, at *8 (E.D. Pa. May 5, 2020); *Sessa v. Linear Motors, LLC*, No. 19-CV-9914, 2021 WL 6052134, at *9 (S.D.N.Y. Dec. 20, 2021) (citing *Scheel-Baggs v. Bank of Am.*, 575 F. Supp. 2d 1031, 1042 (W.D. Wis. 2008) (concluding that after arbitrator dismissed claim, "the legal question was resolved[,] [so] she no longer owed the debt and any credit report stating the contrary was factually inaccurate")).

Accordingly, this Court should clarify there is no exemption in the FCRA's reasonable investigation requirement for legal questions that a dispute raises. Such an exemption would curtail the reach of the FCRA's investigation requirement in a way that runs counter to the purpose of the provision to require meaningful investigation to ensure accuracy on credit reports. It would also result in an unworkable standard where mixed questions of fact and law are presented, and encourage evasion of statutory obligations by allowing furnishers to characterize disputes as legal. And it could lead to the continued reporting of data that resulted from fraud, which Congress was particularly keen to omit. *See supra at 6-7*.

### 4.   The District Court's Decision Should Be Reversed

The district court's decision should be reversed also because it was based on the court's erroneous determination that no genuine issues of

material fact remained. *See* Op. at 19. The court acknowledged that "whether a furnisher's investigation is reasonable is a factual question normally reserved for trial," and noted that summary judgment is only proper 'if the reasonableness of the defendant's procedures is beyond question." Op. at 19, 26. The court then found that the reasonableness of Chase's investigation "is beyond question" because "the parties in this case each moved for summary judgment on the contention that no genuine issues of fact material [sic] exist." *Id*. But each party contending that its version of the facts leaves no material fact disputed (as the parties did below), is different than the parties agreeing to the same version of the material facts (as the district court implied they had done). Here, the parties disputed each other's versions of the material facts. *See* Def.'s Resp. to Pl.'s Statement of Facts (ECF No. 140), Pl.'s Resp. to Def.'s Statement of Facts (ECF No. 145). Absent the district court's erroneous conclusion (or some explanation by that court for why the disputed facts are not material), it is not clear that the "reasonableness of the defendant's procedures is beyond question."[19]

---

[19] Moreover, as noted above, Congress made clear in various provisions of the FCRA that it did not intend for information resulting from identity theft to be included in a consumer's report, *see supra at 6*-7, and the information at issue here appears to derive from identity theft, regardless of Chase's

**B.  Appellant's Claim Is Timely Because Each Dispute Triggers a New Limitations Period**

The FCRA provides that "an action to enforce any liability created under this title may be brought . . . not later than the earlier of" "(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. This Court should join the majority of lower courts to hold that this limitation period applies to each dispute a consumer raises. Although some lower courts have taken a different view, this Court should confirm that the better reading of the statute is the one adopted by a "majority of courts": that "regardless of whether the information has been previously disputed," each time a furnisher fails reasonably to investigate the dispute results in a new FCRA violation, with its own statute of limitations. *Vasquez v. Bank of Am., N.A.*, No. 15-cv-04072-RS, 2015 WL 7075628, at *3 (N.D. Cal. Nov. 13, 2015); *see also Broccuto v. Experian Info. Sols. Inc.*, No. 3:07CV782-HEH, 2008 WL 1969222, at *4 (E.D. Va. May 6, 2008); *Marcinski v. RBS Citizens Bank,*

---

argument that Ms. Milgram's employee had apparent authority to use the credit card. The cases upon which Chase relied in its motion for summary judgment focused on questions of liability in different circumstances and did not explicitly address credit reporting. The district court should address these questions on remand.

*N.A.*, 36 F. Supp. 3d 286, 291 (S.D.N.Y. 2014); *Maiteki v. Marten Transp. Ltd.*, 4 F. Supp. 3d 1249, 1254 (D. Colo. 2013); *Ponder v. Ocwen Loan Servicing, L.L.C.*, No. 1:16-CV-04125, 2021 WL 5027495 (N.D. Ga.  Aug. 4, 2021). *But see Blackwell v. Capital One Bank*, No. 606CV066, 2008 WL 793476 (S.D. Ga. Mar. 25, 2008) (if multiple disputes concern the same subject matter, the limitation period applies only to the first raised dispute, and any subsequent complaints concerning the same subject matter are subject to the limitations period for the earliest filed claim covering the same subject matter).

This result comports with the text of the statute. No language in the FCRA suggests that a consumer may seek a remedy under the statute for inaccurate reporting on only one occasion or that further challenges to the accuracy of information would be subject to the initial limitations period for a plaintiff's initial challenge. The statute is clear that the limitations period runs from the date of the "violation." 15 U.S.C. § 1681p. Because a "violation" occurs every time a consumer submits a dispute to a CRA that the furnisher does not handle in accordance with the FCRA's requirements, courts have found that prior disputes do not obviate the furnisher's duty to comply with the requirements of the statute. *See, e.g.*, *Bruce v. Homeward Residential, Inc.*, No. 1:14-CV-3325-MHC-AJB, 2015 WL 5797846, at *9

(N.D. Ga. Aug. 31, 2015); *Marcinski*, 36 F. Supp. 3d at 291; *Maiteki*, 4 F. Supp. 3d at 1254.

Some courts have disagreed, and refused to allow additional disputes regarding the same allegedly inaccurate information to be actionable if the first dispute falls outside the statute of limitations, reasoning that to hold otherwise "would allow plaintiffs to indefinitely extend the limitations period and render it a nullity." *Blackwell*, 2008 WL 793476, at *3. However, filing a new dispute does not restart or "extend" the statute of limitations as to the earlier dispute, but rather provides a new opportunity to comply with the FCRA. Should the CRA or furnisher fail to do so, it has committed a new violation, but the earlier dispute (to the extent it is outside the limitations window) is not revived.

The majority approach of holding that each failure to conduct a reasonable investigation is an independent violation of the FCRA for statute of limitations purposes better reflects both Congress's goal of promoting accuracy and the unfortunate reality that consumers may need to file multiple disputes to correct errors. *See, e.g.*, Annual Report at 35-37 (describing consumers who file multiple disputes and are "caught in a loop of obtaining documentation and sending it to NCRAs and furnishers, only to have no updates made to their reports"). It is also more consistent with

28

the consumer-protection remedial purpose of the statute. *See Bruce*, 2015 WL 5797846, at \*10 n.3 ("FCRA is remedial legislation, which is to be liberally construed in favor of consumers . . . [and a] broad reading of the statutory scheme suggests that each violation is potentially remedial").

Under this better reading of the statute, the district court correctly held that Ms. Milgram's FCRA claim relating to disputes she lodged after April 2017 (i.e., less than two years before she filed this action) are timely. This Court should affirm that ruling.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed as to the statute of limitations issue, and otherwise reversed.

April 7, 2022                          /s/ *Karen S. Bloom*

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Acting Deputy General Counsel*
Laura M. Hussain
  *Assistant General Counsel*
Karen S. Bloom
  *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-7012
karen.bloom@cfpb.gov

## Certificate of Compliance

This brief complies with the length limits permitted by Federal Rule of Appellate Procedure 29(a)(5). The brief is 6,466 words, excluding the portions exempted by Rule 32(f). The brief's typeface and type style comply with Rule 32(a)(5) and (6).

April 7, 2022                  /s/ *karen S. Bloom*

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Acting Deputy General Counsel*
Laura M. Hussain
  *Assistant General Counsel*
Karen S. Bloom
  *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-7012
karen.bloom@cfpb.gov

## Certificate of Service

I hereby certify that on April 7, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

April 7, 2022                    /s / *Karen S. Bloom*

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Acting Deputy General Counsel*
Laura M. Hussain
  *Assistant General Counsel*
Karen S. Bloom
  *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-7012
karen.bloom@cfpb.gov